THE STATE OF OHIO, APPELLEE, *v.* BUNDY, APPELLANT.

[Cite as State *v.* Bundy (1985), 20 Ohio St. 3d 51.]

(No. 84-1847—Decided November 27, 1985.)

*Gary L. Van Brocklin,* prosecuting attorney, and *Mary Jane Stephens,* for appellee.

*James S. Gentile,* for appellant.

CLIFFORD F. BROWN, J.

I

The issue upon which the court of appeals certified this case as a conflict is essentially whether the trial court, to determine the availability of personnel files of a police-officer witness to the parties or their attorneys, must conduct an *in camera* inspection of the files prior to its ruling.

In *Dayton* v. *Turner* (1984), 14 Ohio App. 3d 304, the Court of Appeals for Montgomery County held that "where materials are subpoenaed from the internal affairs division files of a police department, a generalized assertion of privilege on the basis of confidentiality must yield to a demonstrated need for such materials for use as evidence at a criminal trial." The *Turner* court concluded that the trial court properly ordered production of the subpoenaed files for an *in camera* inspection so as to weigh the police department's claim of confidentiality against the defendant's need for the evidence.

The trial court's ruling in this case did not conflict with *Turner.* The instant case involves civil service personnel records, which this court has held are public records. *State, ex rel. Dispatch Printing Co.,* v. *Wells* (1985), 18 Ohio St. 3d 382. However, defendant did not proffer any need for the subpoenaed files, nor demonstrate any prejudice from the trial court's ruling. Thus, while it was error not to allow defense counsel access

to this public record, this was harmless error beyond a reasonable doubt under the record presented herein.

## II

The next question presented for review is whether sufficient evidence was presented to support the trial court's conclusion that defendant received or retained the stolen automobile.

R.C. 2913.51 provides that to be convicted of receiving stolen property, a defendant must have received or retained property obtained as the result of a theft offense. "Receiving" implies that the property came into defendant's possession with his knowledge, consent, and approval. *State* v. *Worley* (1976), 46 Ohio St. 2d 316, 329 [75 O.O.2d 366]. In this case, defendant admitted that she used the car for errands and to travel to and from work. She also admitted her suspicions that the car was stolen. Thus, even if Jones also exercised dominion or control over the car, the trial court's conclusion that defendant had "received" the stolen car is reasonably supported by the evidence.

## III

The final question for review is whether the trial court correctly applied the "reasonable cause" standard of R.C. 2913.51.

Defendant maintains that because she is a police officer, the trial court held her accountable for what she should have known, rather than what she actually knew. However, the trial court found only that defendant had reasonable cause to believe that the automobile had been obtained through commission of a theft offense.

The standard of "reasonable cause" in R.C. 2913.51, as applied to a police officer, is a duty to examine fully and use all facts accessible to her because of her position; and the officer will be held accountable when, because of a lapse from the due care required of her under the circumstances, she fails to perceive or avoid a risk that such circumstances may exist.

In the case at bar, defendant suspected the automobile was stolen. She had access to computerized information that the car was stolen. Testimony revealed that a fellow officer had told defendant he had run a check on the automobile and that it was stolen. Thus, the trial court correctly concluded that defendant, albeit because of facts accessible to her because of her position, had reasonable cause to believe that the automobile was stolen.

Accordingly, we hereby affirm the judgment of the court of appeals.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, LOCHER, HOLMES and DOUGLAS, JJ., concur.

WRIGHT, J., dissents.

WRIGHT, J., dissenting. I must respectfully dissent from the affirmance of appellant's conviction for receiving stolen property in violation of R.C. 2913.51.

When she was charged on September 29, 1982, Officer Bundy was serving as a first-year police officer on the Youngstown, Ohio police force. During the late spring of 1982, appellant had been driving a 1981 Buick that she had received from Maurice Jones. The record indicates that she became suspicious that this automobile had been stolen and requested that Officer Daniel Hageman of the Youngstown Police Department run a computer check on the vehicle. According to Hageman this check verified that the car had been reported stolen. (Another officer testified that it had been stolen from RTR Transportation Corp., an automobile rental company operating out of Rochester, New York.) Hageman indicated that he passed this information on to Bundy in May 1982. Bundy flatly contradicted this testimony, indicating that Hageman's check which was passed on to her was negative. Hageman's testimony was absolutely critical to appellant's conviction. The court of appeals affirmed Bundy's conviction. However, finding its decision in conflict with the case of *Dayton* v. *Turner* (1984), 14 Ohio App. 3d 304, the court certified the record of the case to this court for review. Bundy now asserts one primary proposition of law: that the personnel file of Hageman was a public record and the trial court's refusal to grant her access to the file or to consider it as possible evidence for the purposes of attacking Hageman's credibility was prejudicial error.

Appellant subpoenaed Hageman's personnel file in order to show that his trial testimony was tainted by prejudice. Defense counsel moved that he should be allowed to examine the file prior to cross-examination. Counsel was apparently aware of *Dayton* v. *Turner, supra,* and the cases which culminated in our holding in *State, ex rel. Dispatch Printing Co.,* v. *Wells* (1985), 18 Ohio St. 3d 382 (modified upon reconsideration Sept. 25, 1985). The trial court overruled this motion and refused to allow any examination of the file by anyone. The contents of that personnel file remain unknown to appellant, the trial judge, the court of appeals, and this court.

I feel strongly that the trial court's refusal to review the files constituted an abuse of discretion which resulted in a deprivation of Bundy's right under the Fourteenth Amendment of the United States Constitution to a fair trial. The court of appeals disagreed and stated that "[n]othing in the record indicates that appellant was prejudiced by the court's refusal to permit the examination of Hageman's personnel file." I would observe that it is difficult if not impossible to show prejudice when one has been foreclosed from examining the document involved.

I believe that the approach to the admissibility of personnel files articulated in *Turner, supra,* is a well-reasoned one. *Turner* stands for the proposition that the trial court, when examining departmental records, should weigh the public interest in the confidentiality of the records against the right, if any, of the defendant for their use in putting on a

defense. *Turner* reasons that the right to disclosure to the defendant, like the state's interest in non-disclosure, is not absolute. The procedure outlined in *Turner* strikes a balance between governmental privilege and criminal due process. I would emphasize that in *Turner* the court was *not* dealing with a personnel file but rather with a document that was not even clearly a public record. *Turner* proposes that, once subpoenaed, the file should be turned over to the court for an *in camera* inspection. In my view this is the *very least* that should have occurred in this particular case.

*Turner* follows the rationale of *United States* v. *Nixon* (1974), 418 U.S. 683, 713, "that when the ground for asserting privilege as to subpoenaed materials sought for use in a criminal trial is based only on the generalized interest in confidentiality, it cannot prevail over the fundamental demands of due process of law in the fair administration of criminal justice."

The trial judge's refusal to even *examine* the personnel file of Hageman for relevancy and materiality undermines the law as it is articulated in *Nixon* and *Turner*. By refusing to examine the file, the court rendered it impossible to determine whether the personnel materials were relevant, easily procurable by other means, necessary to appellant's defense, or indeed part of a "fishing expedition." Furthermore, the trial judge's actions directly contravene our recent pronouncement in *State, ex rel. Dispatch Printing Co.,* v. *Wells, supra,* that personnel files are public records. Thus, I would accept appellant's first proposition of law and grant her a new trial. I simply cannot accept the "rationale" that appellant has failed to demonstrate prejudice for the simple reason that the trial court absolutely foreclosed her from making such a demonstration. For these reasons, I feel that the judgment of the court of appeals should be reversed and the cause remanded to the trial court for a new trial.